IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JWJ HOTEL HOLDINGS, INC.,           )
f/k/a AJJ HOTEL HOLDINGS, INC.;     )
MIKE KAMMERER, in his capacity as   )
Co-Manager of W&H Realty, LLC; and  )
W&H REALTY, LLC,                    )
                                    )
                Appellants,         )
                                    )
        v.                          )        Case No. 21-2218-JWL
                                    )
THE REVOCABLE TRUST OF JOHN Q.      )
HAMMONS DATED DECEMBER 28, 1989     )
AS AMENDED AND RESTATED,            )
                                    )
                Appellee.           )
                                    )
_____)


## <u>MEMORANDUM AND ORDER</u>

In this adversary bankruptcy proceeding, appellants (collectively "AJJ") brought claims against debtor appellee ("the Trust") to enforce a right of first refusal relating to the transfer by the Trust of its interest in W&H Realty, LLC ("the LLC"), of which AJJ and the Trust were the sole members owning equal shares. The matter comes before this Court on appeal, pursuant to 28 U.S.C. § 158(a), from the bankruptcy court's rulings against AJJ on its claims. As set forth more fully below, the Court **affirms in part and reverses in**

**part** the bankruptcy court's rulings, and it remands the case to the bankruptcy court for further proceedings consistent with this opinion.[1]

## I.    __Background__

In 2016, the Trust and various affiliated entities filed for bankruptcy.  At that time, the Trust owned 50 percent of the shares in W&H Realty, Inc.; the other 50 percent interest was owned by three other trusts.  In 2017, these owners engaged in various transactions to convert the corporation to a limited liability company (the LLC).  After those transactions, the only two members of the LLC were the Trust and AJJ, with each holding a 50-percent share.  The Trust and AJJ executed the LLC's First Amended and Restated Operating Agreement ("the Operating Agreement"), effective May 18, 2017, to govern the LLC.

In early 2018, the debtors reached a settlement of disputes with creditor J.D. Holdings, L.L.C. ("JDH"), by which JDH would acquire assets of the debtors, including the Trust's 50-percent interest in the LLC.  The bankruptcy court confirmed the plan effecting that settlement.

Subsequently, a dispute arose between the Trust and AJJ concerning the Trust's appointment of a co-manager for the LLC, and in July 2018, the Trust initiated the present adversary proceeding to litigate that dispute.  AJJ asserted counterclaims for declaratory

---

[1] Neither party has requested oral argument, and the Court has determined, after examination of the briefs and the record of this appeal, that the facts and legal arguments have been adequately presented therein, and that oral argument will not significantly aid the dispositional process and is therefore not needed.  *See* Fed. R. Bankr. P. 8019.

relief, in three counts: in Count I, AJJ asserted a right to purchase the Trust's membership interest in the LLC, pursuant to a contractual purchase right; in Count II, AJJ sought a declaration concerning JDH's ability to participate in the management or become a member of the LLC; and in Count III, AJJ sought a declaration that the Trust may no longer participate in the management of the LLC and that AJJ may now manage the LLC on its own. The bankruptcy court dismissed Count II, and that count is not at issue in this appeal. By order of March 10, 2020, the court denied AJJ's motion for judgment on the pleadings on Counts I and III of the counterclaims. By order of April 29, 2021, the court granted summary judgment to the Trust on those counterclaims (while denying AJJ's motion for summary judgment). AJJ now appeals that adverse judgment on Counts I and III of its counterclaims.

## II.   Governing Standards

In this case, AJJ appeals the bankruptcy court's legal determinations that the Trust was entitled to judgment as a matter of law on AJJ's claims, and such legal determinations are reviewed by this Court under a *de novo* standard of review. *See In re Hicks*, 491 F.3d 1136, 1139 (10th Cir. 2007). The bankruptcy court's interpretations of the parties' Operating Agreement are also legal determinations that are reviewed *de novo. See Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1022 (10th Cir. 2014) (lower's court contract interpretation is reviewed *de novo*). The parties do not dispute that

the Court's standard of review here is *de novo*; nor does either party argue that material facts remain in dispute or that AJJ's claims may not be decided as a matter of law.[2]

The parties agree that Ohio law governs the interpretation of the Operating Agreement, pursuant to the agreement's choice-of-law provision. Ohio law concerning the interpretation of a contract has been summarized as follows:

> The interpretation of written contracts, including any assessment as to whether a contract is ambiguous, is a question of law subject to de novo review on appeal. It is a well-known and established principle of contract interpretation that contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. In carrying out that mandate, the contract is to be examined as a whole. [The court] will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. . . . Only if the terms of a contract may reasonably be understood in more than one sense can they be construed as ambiguous. . . . Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous . . . .

*See Envision Waste Servs., LLC v. County of Medina*, 83 N.E.3d 270, 275-76 (Ohio Ct. App. 2017) (citations and internal quotations omitted).


### III.   AJJ's Claim to Enforce Purchase Right

In Count I of its counterclaims, AJJ seeks a declaration that it has the right to purchase the Trust's interest in the LLC. In the bankruptcy court, AJJ cited three separate

---

[2] Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

bases for that right under the LLC's Operating Agreement, which bases the Court addresses in turn.

A.    *Section 1.6*

AJJ argues that a purchase right arises under Section 1.6 of the Operating Agreement. That section provides as follows:

> The parties recognize, acknowledge and agree that the Company [the LLC], by operation of law and through the prior merger of REW/JQH Holdings, Inc. into the Corporation before its conversion into the Company assumes all of the rights and obligations of the predecessor companies, including those arising under any contract to which the predecessor companies were a party. Without limitation of the scope of the previous sentence, the parties also specifically agree that the following documents (collectively the "**Corporation Documents**") remain in force and effect and shall bind the Company . . . for any claim or right pursuant thereto . . .: [five documents listed].

One of the Corporation Documents listed in this provision is the W&H REALTY, INC. Stock Purchase and Buy-Out Agreement dated April 16,1993 (the "Buy-Out Agreement"). The Buy-Out Agreement was executed by the LLC's predecessor corporation and the corporation's three shareholders, and it includes a provision stating that if one shareholder "desires" to transfer his shares or an interest therein, the corporation and the other shareholders have the right to purchase those shares or interest on the same terms. AJJ argues that the Buy-Out Agreement, applicable through Section 1.6 of the Operating Agreement, grants it the right to purchase the Trust's membership interest in the LLC on the same terms offered by JDH.

The bankruptcy court rejected this argument in its summary judgment order. The court ruled that Section 1.6 by its terms makes the Buy-Out Agreement (and the other

Corporation Documents) binding only on the LLC ("the Company") and not also on the LLC's members (the Trust and AJJ). The court deemed the contractual language ambiguous, and it relied on the undisputed extrinsic evidence that the parties had changed "shall bind the Company and its Members" in an earlier draft to "shall bind the Company," thereby demonstrating their intent that only the LLC and not its members would be bound by the Corporation Documents.

On appeal, AJJ renews its argument that Section 1.6 should be interpreted to make the Corporation Documents also binding on the LLC's members. AJJ does not dispute that the provision states that the Corporation Documents shall bind "the Company," with no reference to the LLC's members. It argues, however, that the preceding language – the parties' agreement that the Corporation Documents "remain in force and effect" – represents a separate agreement that binds the LLC members, as analogues to the shareholders bound by the Buy-Out Agreement. The Court concludes, however, that a consideration of the entirety of Section 1.6 does not support such an interpretation. The provision states that the LLC assumes the obligations of the predecessor corporation executed, and then it proceeds to specify particular agreements that bind the LLC. Giving the provision its plain meaning, the second sentence of Section 1.6 states first that those agreements remain in force and effect, meaning they continue to bind the parties that executed them; and second that they also bind the LLC. Section 1.6 contains no language indicating that the Corporation Documents also bind the LLC's members.

In addition, this interpretation is supported by a consideration of the Operating Agreement as a whole, as the agreement contains its own transfer restrictions in Section 6.

The presence of those restrictions – which are not identical to the transfer restrictions contained in the Buy-Out Agreement – undermine AJJ's argument that the parties intended to bind the LLC's members to the Buy-Out Agreement in order to make sure that transfers of ownership interests were still restricted.

Finally, even if Section 1.6 could be considered ambiguous, the bankruptcy court's interpretation is supported by extrinsic evidence. As noted by the bankruptcy court, an earlier draft of Section 1.6 proposed by AJJ explicitly made the Corporation Documents binding on both the LLC "and its Members," but the parties eventually agreed to proceed without the reference to the members. AJJ argues that the reason for that decision is unknown, but it does not dispute that the parties did ultimately agree not to include a reference to the members. Thus, the only extrinsic evidence cited by the parties indicates that the parties considered stating that the Corporation Documents are binding on the LLC's members, but chose instead language making the Documents binding only on the LLC. That evidence supports the interpretation that the Documents are binding only on the LLC, as Section 1.6 states in plain terms, and in the absence of other evidence, the Court adopts that interpretation.[3]

Accordingly, the Court rules as a matter of law that the Buy-Out Agreement's transfer restrictions are not enforceable against the Trust through Section 1.6 of the Operating Agreement. The Court thus affirms the bankruptcy court's ruling to that effect.

---

[3] AJJ has not cited any other relevant extrinsic evidence on appeal. Nor has AJJ argued that a question of fact remains concerning the parties' intent.

              B.      *Section 6.7*

AJJ also contends that the Buy-Out Agreement's transfer restrictions may effectively be enforced against the Trust through Section 6.7 of the Operating Agreement. Section 6.7 provides as follows:

> Notwithstanding anything to the contrary contained in this Agreement, no membership interest shall be transferred in violation of any franchise agreement (or equivalent) or loan document binding the Company or any entity owned directly or indirectly by the Company or any of the Corporation Documents.

AJJ argues that Section 6.7 prohibits a transfer by the Trust that does not allow for AJJ's exercise of purchase rights because such a transfer would violate the Buy-Out Agreement (one of the Corporation Documents).[4]  The bankruptcy court rejected this theory, ruling that Section 6.7 did not apply here because the Trust never actually transferred its membership interest to JDH.

This Court affirms the bankruptcy court's rejection of this theory, but for a different reason.  As discussed above, Section 1.6 makes the Buy-Out Agreement and the other Corporation Documents binding only on the LLC and not also on its members.  Thus, the Trust cannot have violated the Buy-Out Agreement by any transfer, and therefore Section 6.7 is not implicated here.

---

[4] AJJ essentially argues that the parties intended, by this paucity of language and despite the language of Section 1.1, that the Buy-Out Agreement's transfer restrictions would apply to the LLC's members, who were not parties to that agreement, with all references to shareholders and corporate shares implicitly replaced by references to LLC members and their membership interests.

C.      *Section 6.5*

Finally, AJJ argues that it may exercise a purchase right arising under Section 6.5 of the Operating Agreement.  That provision provides in relevant part as follows:

**6.5     Right of Purchase**

Notwithstanding anything to the contrary contained in this Agreement, if a Person holding, whether as an Assignee or as a Substitute Member, all or any part of a Membership Interest (herein "**Seller**") receives a written offer (the "**Offer**") which Seller is willing to accept from a Third Person(s) ("**Offeror**") to sell or transfer any or all of Seller's Membership Interest, Seller shall [provide notice to the LLC and the other members, who may elect to purchase on the same terms].

The bankruptcy court rejected this basis for the existence of a purchase right.  In denying AJJ's motion for judgment on the pleadings, the court ruled that Section 6.5 applies only to assignees and substitute members, and that the provision therefore does not apply to a transfer by the Trust, an original member of the LLC.  In its summary judgment ruling, the court stated in a footnote that, even if Section 6.5 did apply to the Trust as an original member, the purchase right in that section has not been triggered because the Trust was only willing to sell to JDH if AJJ would not exercise purchase rights; AJJ always maintained that it would exercise such a right; and thus the Trust did not receive an offer that it was "willing to accept."

Before addressing the merits of this issue, the Court first rejects the Trust's procedural argument by which it seeks to prevent AJJ from pursuing this theory on appeal. The Trust notes that the bankruptcy court rejected this theory in its 2020 order on the motion for judgment on the pleadings; and it argues that AJJ's notice of appeal, to which AJJ attached only the 2021 summary judgment order, violated the rule requiring the

attachment of all orders being appealed.  *See* Fed. R. Bankr. P. 8003 (a)(3).[5]  Of course, even if AJJ were now prohibited from appealing the denial of its motion for judgment on the pleadings, it could still appeal the summary judgment ruling, which disposed of AJJ's counterclaims and which referenced AJJ's reliance on Section 6.5.  Moreover, the Trust concedes in its brief that such a designation mistake is not necessarily fatal if the intent to appeal a ruling may be fairly inferred and the other party was not misled or prejudiced.  *See Williams v. Akers*, 837 F.3d 1075, 1078 (10th Cir. 2016) (cited by the Trust) (noting that the designation requirement is construed liberally).  In its statement of issues filed shortly after the notice of appeal, AJJ explicitly stated that its was appealing both orders by the bankruptcy court, and therefore the Trust cannot have been prejudiced by the omission of one order from the notice of appeal.  Accordingly, the Court will consider AJJ's theory based on Section 6.5.

The Court also rejects the Trust's argument that AJJ has improperly relied on new arguments concerning Section 6.5 that it did not make before the bankruptcy court.  AJJ did sufficiently articulate below the same argument that it makes here, namely that Section 6.5 applies by its terms to original members of the LLC.

The Court thus turns to the interpretation of the provision.  The purchase right in Section 6.5 arises "if a Person holding, whether as an Assignee or as a Substitute Member, all or any part of a Membership Interest" receives an offer to sell.  "Person" is defined

---

[5] The Trust has not argued that AJJ was required to appeal the rejection of this theory in 2020 after the bankruptcy court issued its interlocutory ruling on the motion for judgment on the pleadings, which ruling did not dispose of AJJ's claims.

broadly in the Agreement to include any individual or entity permitted to be an LLC member under Ohio law. An "Assignee" is an assignee or transferee of a Membership Interest. Elsewhere in Section 6 the Agreement provides that an Assignee may not also become a Substitute Member without the consent of all members and co-managers, although a non-member Assignee shall nevertheless be entitled to all of the economic benefits of a Membership Interest.

The Trust argues that Section 6.5 applies only in the event of an offer received by an Assignee or a Substitute Member, and thus does not apply to the offer it received as an original member of the LLC. AJJ argues that the key phrase, "whether as an Assignee or as a Substitute Member," is illustrative, not restrictive, and that the provision thus applies to an offer received by any Person.

The Court begins its contract interpretation by applying the ordinary rules of grammar. *See Oliveri v. OsteoStrong*, 171 N.E.3d 386, 391 (Ohio Ct. App. 2021). The Court agrees with AJJ that, as a matter of proper grammar, a phrase beginning with "whether" that is set off by commas is illustrative and not restrictive, and equates with a phrase beginning "whether or not." *See State ex rel. Baumruk v. Belt*, 964 S.W.3d 443, 447 (Mo. 1998) (citing the "well-established rule that when the word *whether* is used to introduce an issue, *whether* encompasses both the positive and negative resolution of the issue," with the effect that "use of *or not* is superfluous") (citing Bryan A. Garner, *A Dictionary of Modern Legal Usage* 575 (Oxford Univ. Press 1987)); *State v. Phillips*, 2008 WL 5205457, at *3-4 (Ohio Ct. App. Dec. 12, 2008) (unpub. op.) (a parenthetical expression set off by commas contains non-essential information, and the meaning of the

sentence would not be changed if the phrase were omitted) (citing Yelin & Samborn, *The Legal Research and Writing Handbook* 344 (2006)); *State v. Tunney*, 895 P.2d 13, 16 & n.4 (Wash. Ct. App. 1995) ("Under the rules of punctuation, appositives which serve a nonrestrictive (parenthetic) function are set off by commas; appositives which serve a restrictive (necessary) function are not.") (citing Strunk & White, *The Elements of Style* 1-4 (3d ed. 1979)), *aff'd*, 917 P.2d 95 (Wash. 1996).  Thus, application of the ordinary rules of grammar yields the interpretation that Section 6.5 applies to any transferor, whether or not an Assignee or Substitute Member.[6]

In arguing that the "whether" phrase should be interpreted restrictively, the Trust notes that if the parties meant to refer to both original and subsequent members, they could simply have made the provision applicable to "members" generally.  As noted above, however, a transferee could be denied full membership in the LLC, and thus the use of "Person" was required (instead of "member") in order to account for such an Assignee.  On the other hand, as AJJ notes, if the parties had intended the provision to apply only to Assignees and Substitute Members, they could simply have made the provision applicable "if any Assignee or Substitute Member" receives an offer.

Finally, the parties have not cited any extrinsic evidence that could aid the Court's interpretation, other than the fact that, as AJJ notes, the owners of this company had

---

[6] The Trust notes that each of the cited cases involved the interpretation not of a contract but of a statute or a charging document.  The cases are cited, however, in support of this particular rule of grammar, to aid the Court in complying with Ohio law that requires the application of the ordinary rules of grammar.  The Trust has not cited contrary authority or disputed that this is the prevailing rule of grammar.

enjoyed a right of first refusal for any transfer prior to the conversion to an LLC.  In the absence of any other evidence or any basis to restrict Section 6.5's application to Assignees and Substitute Members, the Court will give effect to the terms of the provision as written, in accordance with the prevailing rules of grammar.  The Court therefore concludes as a matter of law that Section 6.5 of the Operating Agreement is not restricted to offers received by Assignees and Substitute Members and does apply to offers received by original members of the LLC, and it reverses the contrary ruling by the bankruptcy court.

The Court next considers whether Section 6.5's purchase right has been triggered in this case.  The bankruptcy court stated in its summary judgment order that if Section 6.5 did apply to original members, the purchase right would still not be triggered in this case because the Trust never received an offer that it was willing to accept.  AJJ argues, however, that if a transfer of the Trust's membership interest actually occurred here, then the Trust would necessarily have received an offer that it was willing to accept.  The Court agrees with that principle, which the Trust has not disputed on appeal.  Section 6.5 contains a trigger – the receipt of an offer that the seller is willing to accept – that occurs before the transfer actually takes place in order to allow for notice to the LLC and the other member and a possible purchase right election.  The grant of the purchase right would essentially be eviscerated, however, if an actual transfer could be effected without triggering the

purchase right under Section 6.5, and the Court thus interprets that provision to mean that the right is also triggered in the event of an actual transfer.[7]

In considering the applicability of Section 6.7, the bankruptcy court ruled that no transfer has taken place here. The court stated that AJJ had conflated the economic benefits transferred to JDH with the *right* to those benefits, and it concluded that the right to the benefits had remained with the Trust under the confirmation orders. This Court agrees with AJJ, however, that a transfer of the Trust's Membership Interest, as defined by the Operating Agreement and in accord with Ohio law, did occur here.

The Agreement defines Membership Interest as a member's rights in distributions and allocations from the LLC. As discussed above, Section 6.1 distinguishes a transfer of all or part of a Membership Interest from the substitution of a new member (the latter requires additional consent). Similarly, Ohio's LLC statutes provide that, except as otherwise provided in the operating agreement, the assignment of a membership interest does not entitle the assignee to become a member or to exercise all rights of the member, but only entitles the assignee to receive distributions and allocations from the LLC to the extent of the assignment. *See* Ohio Rev. Code Ann. § 1705.18(A). The Ohio Supreme Court has recognized this distinction between the transfer of an LLC membership interest, meaning the transfer of the right to receive distributions; and the transfer of the entire membership, meaning the transfer of all membership rights including management rights.

---

[7] In the same way, if an agreement for a transfer has been reached, then the seller must have been willing to accept the buyer's offer. The Court appreciates that the Trust may have agreed to the transfer of its interest in the LLC only to facilitate its reorganization in bankruptcy, but for whatever reason, it agreed.

*See Holdeman v. Epperson*, 857 N.E.2d 583, 586 (Ohio 2006).  Thus, under this Operating Agreement and Ohio law, a membership interest consisting of the right to distributions may be transferred even while the transferor member retains the membership and other membership rights.

That is exactly what occurred here.  Under the bankruptcy court's confirmation orders, all of the Trust's assets were to vest in JDH.  In the case of certain delayed assets, the Trust retained the asset, but "all economic benefits and interests" from the asset inured to the benefit of JDH pending the closing on that asset.  Specifically with respect to the LLC, the Trust was to inform AJJ of the mechanism by which the Trust's interest in the LLC would be transferred to JDH.  Taken together, those provisions in the court's orders mean that although the Trust retained (and has not yet transferred) its full membership in the LLC and the entirety of its membership rights, all economic benefits from the LLC inured in – and thus were transferred to – JDH (who has in fact been receiving the Trust's share of distributions made by the LLC).  Section 6.5 applies to the transfer of a Membership Interest as defined by in the Operating Agreement, which means that Section 6.5 is triggered by any transfer of a member's right to receive LLC distributions.  JDH has been given the right to receive the LLC distributions; thus, as a matter of law, a transfer of the Trust's Membership Interest has taken place.

The Trust argues that a contractual right to receive money is not the same as the right to receive distributions from an LLC.  Of course, the right to receive distributions from the LLC is itself a contractual right, arising from the contract governing the LLC, and thus this distinction urged by the Trust is not readily apparent.  Moreover, the Trust has not

cited any authority or offered any additional reasoning why JDH's right to receive the distributions that arose under the bankruptcy court's orders is not the same as the right to receive distributions made by the LLC, or why something else must have been intended by the Operating Agreement.  It is clear from the entirety of the Operating Agreement that a purchase right arises under Section 6.5 even when a transfer of less than all of a member's rights has occurred (or when the member is willing to accept an offer for such a transfer), for instance when only economic benefits are transferred.

The Court thus concludes as a matter of law that a transfer of the Trust's Membership Interest has occurred, and that AJJ's purchase right under Section 6.5 of the Operating Agreement has therefore been triggered.  The bankruptcy court's contrary ruling is hereby reversed, as is the bankruptcy court's summary judgment in favor of the Trust on Count I of the counterclaim.

The bankruptcy court also denied AJJ's motion for summary judgment on Count I, but the Court declines to reverse that ruling.  The Trust states in its brief that it asserted other defenses to AJJ's claim that the bankruptcy court declined to address.  Neither party has discussed those defenses on appeal.  Accordingly, the case is remanded to the bankruptcy court for further proceedings on Count I to the extent based on Section 6.5, consistent with this opinion, so that the bankruptcy court may in its discretion consider any other defense asserted by the Trust.

### III.   AJJ's Claim Concerning Management of the LLC

The bankruptcy court granted the Trust summary judgment on Count III of AJJ's counterclaim regarding management of the LLC – and denied AJJ's cross-motion – because AJJ had not shown that it has a right to purchase the Trust's interest.  This Court has reversed the bankruptcy court's ruling as a matter of law that AJJ has no purchase right; thus the Court also reverses the bankruptcy court's summary judgment in favor of the Trust on Count III.  Declaratory relief on that count is discretionary, however.  Thus the Court will not reverse the denial of summary judgment to AJJ, but it instead remands the case to the bankruptcy court for further consideration of Count III after AJJ's purchase right claim (Count I) has finally been resolved.[8]

IT IS THEREFORE ORDERED BY THE COURT THAT the bankruptcy court's rulings against appellants on their claims in this matter are hereby **affirmed in part and reversed in part**, as set forth herein, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 18th day of January, 2022, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[8] The Trust argues that Count III concerning management of the LLC should be deemed moot because the liquidation of the LLC, as agreed by the parties, is nearly complete.  The bankruptcy court rejected that same mootness argument by the Trust, and thus this Court remands the claim to allow the bankruptcy to decide in its discretion whether declaratory relief is appropriate.